Good morning, Your Honors, and may it please the Court. Sorry? Good morning. Good morning. My name is David Keene. My partner, Andrew Trombley, and I are supervised law students participating in the Boston College Law School Appellate Project. We are appearing under the supervision of Professor Kari Hong, who is seated at council table with us. We represent the petitioner in this case, Mr. Gabriel Jara-Arellano, to whom I will refer to as Mr. Jara. With leave of the Court, I respectfully wish to reserve two minutes for my partner, Andrew Trombley, to provide a rebuttal argument. There are four reasons to reverse the BIA decision. The first reversible error is that the government concedes that this Court should remand Mr. Jara's cat claim to permit the BIA to reconsider its acquiescence finding in light of this Court's decision in Madrigal. We agree with the government's request for remand for this acquiescence claim. However, as set forth in the remaining three errors, we are also asking the Court to hold that the BIA erred in finding Mr. Jara ineligible for asylum and withholding as well. However, this Court could remand only the cat claim right now and stop there. The second reversible error is that the BIA violated Delgado. The BIA found that Mr. Jara was ineligible for asylum and withholding under the INA because he had been convicted of, quote, at least one particularly serious crime, end quote. Under Ramirez-Altamirano, this Court's review is limited to the actual reasons provided by the BIA. The problem here is that we do not know which crime, either the controlled substance violation or the firearms conviction, is the particularly serious crime or whether both were particularly serious. This is a serious crime. What difference would it make as long as we have a stipulation in the record that he pled guilty to a serious crime? Your Honor, the stipulation is not binding upon this Court because it is a stipulation to an issue of law. And, in fact, under this Court's precedent, a stipulation to a finding of law is not binding. And in Kazar's case he stipulated to conviction. He stipulated that he had been convicted of at least one particularly serious crime. A finding of a particularly serious crime is a question of law. As articulated in Vizcarra-Ayala, this Court held, quote, whether an offense is an aggravated felony is a question of law. And so the stipulation is not binding. The problem here is that we do not know which crime, either the controlled substance violation or the firearms conviction, is the particularly serious crime. As articulated in Vizcarra-Ayala, this Court held, quote, whether an offense is an aggravated felony is a question of law. And so the stipulation is not binding upon this Court. And in fact, under this Court's precedent, a stipulation to a finding of law is a question of law. And so the Court held that the statute is sufficient to exhaust the issue, as well as under Renby Holder, because Mr. Hara, who was pro se at that point, did raise the issue in his brief. This has also been exhausted for that reason as well. On the admission, as I read the admission, it's there is no factual admission, correct? Correct. Yes. And if there were a factual admission, then we'd be in a different category. Correct, Your Honor. Yes. As pointed out by the government, it would be binding upon this Court. However, because the issue is particularly serious crime, because that is a legal question, it is not, in fact, binding on this Court. Could I just stop and ask you to clarify just one point? You said we could just remand on Catt because everybody agrees on that and be done with it. But aren't you also asking us to remand on the prior convictions as well? Yes. Yes, Your Honor. Of course we are. And that is both for reasons that I stated, the Delgado issue, as well as our third and fourth point contends the neither of his convictions are aggregated felonies and thus bar him from asylum and withholding. So to return to the second point, the Delgado issue, just as in Delgado this Court remanded the case to the BIA because there was no way to tell which of the DUIs was the particularly serious crime, so, too, in this case, because there is no way to tell whether it was the controlled substance conviction or the, excuse me, firearms conviction, we don't know, and there's no way for this Court to conduct a meaningful review. Therefore, just stopping after Delgado, after the second point, this Court can remand all three claims, the Catt as well as the asylum and withholding claims. However, turning to the third reversible error, the third reversible error is that Mr. Jara's controlled substances conviction under the California Health and Safety Code section 11378 is not an aggravated felony. Here, the parties agree that 11378 is not a categorical match with the Federal generic statute. If Aguila Montes were to still apply, we would then continue automatically to the modified categorical approach. However, we no longer automatically go to that step because under DeCamp, we must first determine whether the State statute is overbroad or divisible. If it is overbroad, the inquiry stops there, and the State conviction cannot be the basis for finding of an aggravated felony. However, if the statute is divisible, then we would proceed to the modified categorical approach. In this case, section 11378 is overbroad because the particular substance that a defendant possessed for sale is not an element of the offense. And there are four reasons why the particular substance is not an element of the offense. Sotomayor, where would that get us as a practical matter, though, even if we were to decide to go modified categorical when the BIA hadn't done that, which raises some other administrative issues? But he would still have to have resolved the firearm issue, correct? Am I missing something? Yes. So the third and fourth points of my arguments are, first, that the controlled substance conviction is overbroad, and fourth, that also the firearms offense is overbroad. If either of those were, in fact, divisible, we would proceed to modified categorical on either one. However, the controlled substance statute is overbroad for four reasons. First, possession for sale of any substance found on the California controlled substance schedule does not assign any different punishment to the defendant. Under 11378, a meth addict as well as a baseball player who possesses steroids are punished the same. This is different from other controlled substance statutes in California, including California's crack cocaine statute, section 11352. That assigns a different punishment based on whether a defendant has sold powder cocaine or crack cocaine. So for that statute, California has held that the identity of the substance is an element. Second, the second reason why the particular substance is not an element of 11378 is because defendants in California can plead guilty to broadly violating 11378 without pleading to a particular substance. This Court's decision in Kabantech recognizes that a defendant may plead to a general violation of a statute that defines an offense as involving only a, quote, controlled substance. Indeed, Kabantech cites the Ruiz-Vidal case as an example in which a defendant pled guilty to only violating, quote, California Health and Safety Code, section 11377a, end quote. In that case, the specific substance was not identified. In Ruiz-Vidal, even though the defendant was charged with, quote, possession of a controlled substance, 2-wit methamphetamines, end quote, he pleaded guilty to a generic offense. And because a defendant can plead guilty to this generic offense and because in order to plead, a defendant must plead to every element of the crime, the particular substance cannot be an element of this crime. Turning to the third reason why the particular substance is not an element of 11378, the plain text does not require the jury to find which substance the defendant possessed. In this way, 11378 is identical to de Kamp's hypothetical weapon statute. In explaining why the analysis under Aguila-Montes was wrong, the Supreme Court in de Kamp noted that, quote, as long as the statute itself requires only an indeterminate weapon, that is, all the indictment must or is likely to allege, and all that the jury instructions must or are likely to mention, end quote. This is what we have in 11378. There is nothing to show that the jury needs to find anything more than an indeterminate controlled substance. Just as the de Kamp weapon statute, the jury does not need to agree whether Mr. Hara possessed for sale methamphetamine or anabolic steroids. The fourth, on this point, Vega-Ortiz has misunderstood the California case law. In Vega-Ortiz, the district court conceded that a specific drug does not need to be charged under 11378. However, it reasoned that the particular drug must be proven. The district court leapt to that conclusion without citing any case law. Without any California case law cited in Vega-Ortiz or by the government in this litigation, that shows that the specific identity of a drug must be alleged – sorry – that must be alleged in information that is not an element of an 11378 offense. Turning to the fourth reversible error, Mr. Hara's firearms conviction is not an aggravated felony. Here, the parties disagree as to whether the California statute is a categorical match with its Federal counterpart. In fact, it is not. California prohibits felons from possessing antique firearms under Section 12021. By contrast, the Federal statute expressly excludes antique firearms from the definition of firearms. While the government argues that the Federal statute's exclusion of antique firearms from the definition of firearms is an affirmative defense, antique firearms and thus antique firearms fall under the Federal definition of firearms, this is, in fact, not the case. In Galvin-Rubio, an unpublished district court decision from California, the district court had rejected this exact argument. And moreover, in this Court's decision in Morial Luna, in a footnote, it observed that there is no categorical match between the Federal statute and a similar California firearms statute. Here, because there is no categorical match, because once again, the State statute in California criminalizes the possession of antique firearms, whereas the Federal statute does not include antique firearms under its definition, because there is no categorical match, once again, under Aguilamontes, we would have proceeded directly to the modified categorical approach. However, under DeCamp, we must proceed to the inquiry of whether the statute is overbroad or divisible. Kagan. Could you explain one thing that was unclear to me? As I recall, around the time this was set for argument or before, there was this effort to remand at the time, and I thought that, on behalf of Mr. Hara, that you had opposed that. Is that correct? That is correct. Okay. So, and I understand that he's in a significantly difficult situation, that he, according to you, needs some medical attention. He does. That is correct. So if we remand under Delgado and the cat, is there something I'm missing why this didn't get remanded before it showed up here? The agreement on the government's side is only on the cat issue. Okay. And so Mr. Hara would be subject to much greater forms of relief under asylum withholding, and thus we reach Delgado and also DeCamp. And that was the main reason why we had opposed the remand just on cat and wanted to get to all of the different issues here today. But I'm still trying to understand as a practical matter for him in getting what he thinks he needs in terms of medical attention, if you want us to make a decision that these prior convictions are not exclusionary convictions, correct? Yes. But that still wouldn't give him asylum, would it? It would not bar him automatically from asylum. Right. So you're still backing a remand. In other words, I'm still having some trouble. He's still backing an administrative proceeding, because that only in effect removes a bar. And the cat, of course, puts him back to have the appropriate standard applied. So I'm just trying to understand as a practical matter what the timing of any of these things that she's for your client and what you actually want. Certainly, Your Honor, it is our understanding that this is the best possible remedy that this Court can offer our client. If Your Honor believes there is a better possible remedy, certainly we would be amenable to that as well. But it is our understanding that by removing these bars, at least it gives him a fighting chance in front of the BIA. All right. Why don't you save the remaining time for your colleague, if you will. Thank you. Good morning, Your Honors. May it please the Court, Tiffany Walters for Respondent, the Attorney General. Do you want to pull that microphone down? Is that better? It is. Thank you. As it now appears that there's no argument that we shouldn't remand this case for the cat claim, I'll just move on to the other issues presented. If there's no questions on the cat issue. Were you stipulated to it? Yes. Yes. And although Petitioner originally opposed that, it now appears that they've withdrawn that. All right. The second issue is Hara's eligibility for asylum and withholding of removal. The core of his argument is essentially that after decamp, his convictions are no longer particularly serious crimes, because they're no longer aggravated felonies. But upon remand, Hara can present these arguments to the Board. The Board didn't consider these arguments because decamp came out after the Board's decision. They were never before the Board. The Board's never had a chance to address these issues, and they could be addressed on remand in the first instance. As such, it's not necessary for this Court to actually reach these issues. However, they are de novo issues that the Court could choose to reach. They're legal issues. So to that extent, we would argue that even if the Court agrees with Hara that decamp does change anything, it still would need to be remanded, because even if these convictions aren't per se particularly serious crimes, they could still be discretionary particularly serious crimes. So this is going to have to go back to the agency no matter what happens here. And to that extent, we do refer to the Board. Sotomayor, could you explain how this would work, a remand on Catt? Let's say we just take different options. If we were to remand on Catt, and then to accept under Delgado that because we don't know the basis for the agency's decision, it would go back, would it go back to the BIA or to the IJ, or would that be discretionary with the BIA? It would go back first to the BIA. To the extent it requires additional fact-finding, it will need to go back to the immigration judge. The decamp issues don't necessarily present fact-finding issues unless you get to the discretionary particularly serious crime issue. In that case, they might need testimony on what actually happened during these crimes and more than usual. So let's say that it went back to the BIA and they determined that despite decamp, there still was some leeway to call these the aggravated felony in a serious crime. You would still need to go back to the IJ potentially for fact-finding on the discretionary aspect. Well, if they're per se particularly serious crimes, there's really nothing more for the IJ to do. But it's still likely to need to go back to the IJ on the Catt issue. Okay. Because we still don't have a finding on the efficacy of any government efforts to protect him. And that's going to require a review of the country condition evidence and the record and consideration of all that. This is a particularly compelling case, at least as presented. I mean, you have a gentleman who basically assisted the United States in connection with these drug cartels. He's down in his hometown and this guy identifies him and he shoots him. And now he's basically left in a terrible situation. And I realize there's a variety of legal issues between him and remaining in the United States. But this is kind of no way to treat a friend, is all I'll say, recognizing there are legal issues. So my question is this. I know the case went to mediation before. In light of all of these things and the need for remand, would the government consider that option again? Certainly. We've always been open to remand and we're supportive. I mean mediation, not remand. That's what it is. Mediation. I think the issue perhaps with mediation is that although we're open to the board reconsidering the issues under DECAMP, we're not willing to concede that DECAMP actually changes anything. And so to the extent that that's going to be required for the parties to reach an agreement, I'm not sure we're going to be able to reach an agreement in mediation. Perhaps that's where this panel can assist us. And I'll reach the substance of our DECAMP arguments in a minute. But just to the extent that the Court does agree, we still need to go back for the particularly serious cases. So recognizing that for asylum purposes you would need to resolve these conviction issues, but you wouldn't for CAP purposes. Correct. Under the formal. And I'm not trying to stick you with positions whether you would agree or not agree or Mr. Harris, counsel, as to whether he would agree to more narrow mediation. But could mediation be on the CAP issue? Is there something to mediate? You don't have to say what you would do. I just say is there something to mediate? I think we've probably reached an impasse at this point on mediation. Okay. Thank you. I think it needs to go back to the agency for the agency to consider. MAGICAL is clearly relevant, but it doesn't resolve the case entirely. There just wasn't an analysis before the agency. So it's just, it's got to go back. And hopefully the agency could deal with all of these issues. Yes, Your Honor. So moving on to the DECAMP issues and stipulation issues. As an initial matter, we would argue that the stipulation is, in fact, it was not an error for the board to rely on the stipulation. Before the immigration judge, Harav was represented by counsel. He stipulated that he was ineligible. The arguments raised that they're not particularly serious crimes were not available to him at the time that this was stipulated to. But what would it matter if it's a legal stipulation? I mean, people are wrong sometimes about thinking that they're stipulating. We're not supposed to give conclusive effect to a legal stipulation, are we? To the extent that DECAMP changes things, this Court can definitely reconsider it. But to the extent that they argue that the board's decision was inadequate, under the circumstances, given that it was conceded, given that there was no substantive arguments raised before the board, given that there was no argument that the concession wasn't binding before the board, the board's very concise decision was reasonable under those circumstances. That's our position. Nonetheless, DECAMP changed things. DECAMP came out after the board's decision. None of these arguments have been before the board. Our position is that in this case, DECAMP does not render these convictions no longer aggravated felonies. As to the controlled substance offense, the controlled substance offense, by its plain language, lists a number of alternative substances that a defendant can be convicted of possessing for sale. That's the clear divisibility that DECAMP refers to. So we can look to the conviction documents to determine which of these substances Hara was convicted of possessing. The taking Petitioner's argument to the practical conclusion would essentially render most controlled substance violations under California law no longer controlled substance violations under Federal law. Because most California statutes, as well as other states, are written in just this fashion. Just what happens in fact. Exactly. But then that's why in many of those cases we use the modified categorical. Correct. But if you accept that under DECAMP you can't even reach the modified categorical approach, none of these convictions can be aggravated felonies or, in fact, just controlled substance offenses for purposes of removability. That has a significant effect in vitiating Congress's intent in the immigration laws and providing for these convictions to be controlled substance. Counsel, Judge Gould, if I could ask you a question. Would it be wrong to just vacate the particular serious offense ruling and remand for the board to reassess that in light of DECAMP's? I think that's well within this Court's discretion to remand to the board for reconsideration in light of DECAMP. We have no board decision on the issue, and I think it would be helpful for the board to consider it in the first instance. Granted, it is a legal question, and as such, we're arguing the merits before this Court, should this Court choose to address the merits of the actual particularly serious crime conviction. So the case cited by Petitioner U.S. Could you clarify something. Could you indicate that at the time, when the stipulation rendered into, that counsel was appointed? That counsel was involved? Before the immigration judge, Haro was represented by counsel. Council is who stipulated that That's what I assumed. I heard something differently from the earlier argument that led me to conclude there may be a dispute on that. But there is no question as far as you're concerned, that he was represented before the IJ when the stipulations were entered into? No question before the immigration judge, he was pro se before the board. I think there's also no question as to that. Okay. Looking to the district court decision in Vega Ortiz, the district court held that the controlled substance provisions at issue here were divisible and the drug type was an element that must be proven beyond a reasonable doubt. The court looked at the plain language of the statute. It looked at jury instructions, which actually provide that the identity of the drug is something that must be proven in order to convict. Even if this drug doesn't have to be identified in the information, it still needs to be proven that there was a controlled substance involved. Otherwise, there is no conviction. This is an element of the crime. And it simply requires that the criminal court reach that issue. And to the extent that Petitioner argues under Ruiz-Vidal or Vidal, that his conviction documents don't establish that he was convicted of possessing methamphetamine, this case is distinguishable. It's much more along the lines of Cabantac and Vino-Torres. In Ruiz-Vidal or in Vidal, both of those cases involve situations where the information or the complaint didn't quite match up to what was pled. So there was a confusion as to what was pled to and whether or not we could look to the information to provide the identity of the controlled substance. In this case, much like in Cabantac and Val-de-Vino-Torres, it's quite clear that Petitioner pled guilty to count three of the information. Count three identifies the controlled substance at issue as methamphetamine. And that's in the abstract of judgment, then. Yes. So the confusion that was present in those other cases just isn't applicable to this case. And even if, and as I discussed before, even if DeCamp didn't render this conviction, per se, a particularly serious crime, it could still be a particularly serious crime as a matter of discretion. So the agency would have to deal with it. Moving to the conviction for possession of a firearm by a felon, again, this court really only needs the controlled substance conviction in order to find that he is convicted of a, per se, particularly serious crime. His controlled substance conviction, he was sentenced to five years of imprisonment, two years for the actual offense, and then a three-year enhancement for recidivism. So under that, that one conviction renders him ineligible for asylum and withholding a removal. We don't need to get to the issue of firearms offense. But even assuming we do get to that issue, that conviction for an aggravated felony, this conviction itself has been held in gill that the anti-firearm exception is actually an affirmative defense, not an element of the crime. So DeCamp, you don't actually consider this under DeCamp because it's not an element, it's an affirmative defense, so it's not relevant for the categorical approach. Petitioner relies on an unpublished decision in United States v. Alvin Rubio, in which the court denied the motion to dismiss the information in a criminal case charging the defendant with being a deported alien found in the United States. There, the court rejected the government's argument that this was not an element, relying in part in Dictiff and Moncrief. However, that decision in Moncrief is distinguishable from the situation here. In Moncrief, which also involved a controlled substance offense, the question was whether or not it was a drug trafficking crime as defined as a controlled substance offense, which was a felony under the Controlled Substance Act. So in Moncrief, the sentencing factors actually were elements of the federal generic crime, because for the federal generic crime, you had to show that it was a felony. So in that case, regardless of how the federal criminal statute was written, you had to look at the question of the sentence in order to determine whether it was a match, categorical match, to the federal generic. Ginsburg. Kagan. If he raised, is there a question there, if it is a defense under BIA case law, you would have to raise it at the time? Exactly. It would have to be raised at the time. It wasn't raised at the time. The facts aren't even clear that this would qualify as an antique firearms exception case. So it's not clear. Again, I believe Petitioner's argument is such that this antique firearms defense would render the felon in possession categorically not an aggravated felony. So it would completely vitiate, again, that portion of the statute. And so the same argument applies, that that really undercuts the intent of Congress in enacting the provisions of the INA. And in fact, this unpublished district court case still doesn't change anything in terms of Gill, because Gill deals with the antique firearms exception. It's still good law after DeKalb, and this court is bound by Gill, which is a Ninth Circuit decision as opposed to this unpublished district court order. Finally, just briefly, there's a state-created danger argument raised in Petitioner's brief. I just wanted to note that because the cat claim needs to go back and that needs to be decided, reaching that question would be premature. He may well still have protection available under the cat. The agency needs to deal with that issue first before we come to the issue of whether or not there's any form of additional protection available to him. Thank you. Thank you. If I may, Your Honors, I'd just like to make six brief points on rebuttal. The first is that, Judge McKeown, you asked about what practical benefit might arise here if this case were remanded. Just so this Court is aware, in case it's not already, Mr. Hara has family in California. He, in fact, has attained permission to be released on bond from detention. And furthermore, if you're allowed to stay in the country, of course, you're not When was that? When did that bond release occur? It was – I don't recall the specific date, Your Honor, but it was in 2013, before the new year. But I can – I'm happy to provide my Court with specific information. That's fine. That was after the briefs were filed? It was, Your Honor, yes. Okay. The second point, Your Honor, is, as I believe, Judge McKeown, you were leaning toward before, is that the stipulation is neither binding on this Court nor is it preclusive toward Mr. Hara to raise his claims regarding withholding an asylum, specifically because the BIA's decision, it was – did not rely on a factual finding and it did not rely exclusively on the stipulation. Instead, on page 2 of the record, it's fairly clear that the BIA affirmatively reached its own conclusion that both of those – or rather, at least one of those convictions amounts to an aggravated felony that would exclude Mr. Hara from asylum and withholding relief. Because it affirmatively reached that conclusion, there's neither preclusion nor any binding effect in this Court. The third point is that if – if this Court were to decide to – were to decide to reverse the BIA's determination that these convictions are per se particularly serious crimes, then the case would be remanded – but would be remanded to cabin the immigration judge's discretion to decide asylum on a discretionary basis. And so it would remove the per se question from both the IJ's and the BIA's scope of review. Finally, if the camp – or I'm – I'm sorry. The – the government makes the argument that if 11378 or the firearm statute are found to be – I see my time has expired. May I just briefly finish this point? Thank you, Your Honors. The government argues that if either 11378 or the firearm statute are found to be would be off the hook, so to speak. But in fact, the camp expressly contemplates that findings of – or of over-breath rather than divisibility will result in under-inclusiveness. That's simply a natural and inevitable product of the modified categorical approach that the camp prescribes. And so as a matter of law, under Supreme Court precedent, that's simply a consequence that this Court would be forced to accept. And unless there are any further questions, I'd like to submit the case. Thank you. Thank you. The case of Hara-Arellano v. Holder is submitted. I do want to thank Boston College and Professor Hong for the pro bono assistance here and also Counselor Mr. Keefe, Mr. Tremblay for your arguments. I also would like to thank Ms. Walters. I think it's very helpful to the Court when we can have good briefing in these cases. I know the government probably agrees. At least it's all laid out for us to then determine, particularly in these questions where there's a matter of law. So we appreciate the pro bono help and we appreciate you coming from Washington, D.C., Ms. Walters. We're adjourned for the morning.
judges: Wallace, McKeown, Gould